STATE, EX REL. BISHOP, *v.* CROWE.

[No. 18,467.   Filed May 17, 1898.]

APPEAL AND ERROR.—*Record.*—*Bill of Exceptions.*—*Motion to Strike Out Part of Pleading.*—The question of the correctness of the ruling of the court on a motion to strike out a part of a pleading is not properly presented for review on appeal, where the motion, as incorporated in the bill of exceptions, refers to the matter stricken out as being on certain pages and lines of the original complaint,

State, *ex rel.* Bishop, *v.* Crowe.

and the paging and lines thereof were all changed by being incorporated in the record. *pp. 457, 458.*

OFFICERS.—*Removal.*—*Acceptance of Incompatible Office.*—A judgment declaring the office of a township trustee vacant on account of the incumbent thereof having been appointed and having accepted the office of postmaster would not affect the validity of an election of county superintendent participated in by such trustee after the acceptance of such office and before the rendition of the judgment of ouster. *pp. 459-464.*

SAME.—*Township Trustee.*—*Collateral Attack.*—Where one has been duly elected to the office of township trustee, inducted into office, and acting as such, his title to such office cannot be questioned in a collateral proceeding. *p. 462.*

QUO WARRANTO.—*Officers.*—*Statute Construed.*—Sections 1145, 1146, Burns' R. S. 1894, authorize a suit in the nature of *quo warranto* in the name of the State against one alleged to be unlawfully usurping and intruding into the office of county superintendent belonging of right to relator. *p. 464.*

OFFICERS.—*Eligibility.*—*Pleading.*—An allegation in a complaint in a *quo warranto* proceeding to remove defendant from office which alleges that relator was eligible to such office is sufficient without setting out his qualifications as required by the constitution. *p. 464.*

From the Jay Circuit Court. *Reversed.*

*John M. Smith* and *Frank H. Snyder*, for appellant.

*D. T. Taylor*, for appellee.

McCABE, J.—This was a suit by information in the nature of a *quo warranto*, filed by the relator, John E. Bishop, claiming to be the rightful county superintendent of Jay county, and charging the appellee with usurping and unlawfully intruding into said office, and calling on him to show by what authority he does so. The circuit court sustained appellee's motion to strike out certain portions of the information, and overruled appellant's demurrer to the second paragraph of appellee's answer. The court also sustained appellee's motion to strike out the second paragraph of appellant's reply, and sustained appellee's demurrer to the third and fourth paragraphs of said re-

ply. The only error assigned is upon these rulings. On sustaining the demurrer to the third and fourth paragraphs of appellant's reply, he refused to amend or plead further, and judgment was rendered against him on demurrer for want of a reply.

The action of the circuit court upon the motion to strike out certain portions of the information is not so presented by the record as to enable us to determine the correctness of that action. The bill of exceptions by which it is sought to incorporate into the record the portion of the information stricken out, contains the motion, reading as follows: "The said defendant moves the court to strike out and from the plaintiff's amended complaint, all after the word 'meeting' in line 17, page 2, to and including the word 'day,' line 24, page 20, for the following reasons," and then follows a statement of certain reasons for the motion. On turning to page 2, line 17, we find no such word as 'meeting;' and on turning to page 20, we find no such word in line 24 thereof as 'day.' No doubt that was a correct designation of the pages and lines, and the words therein, between which, as it appeared in the original complaint, the language sought to be stricken out would be found. But for us to find the language now, since the paging and lines have all been changed by incorporation into the transcript, would be the merest guess work. Moreover, the language stricken out is not in the record, because it is not in the bill of exceptions. The presumption is that all that appears in the information was left there by the court, unless the contrary is made to appear affirmatively by the record, and the contrary does not so appear. *State, ex rel.*, v. *Halter*, 149 Ind. 292; *Dudley* v. *Pigg*, 149 Ind. 363, and cases there cited. Besides, we judicially know that the pages and lines referred to in the bill of exceptions are not the pages and lines

of the transcript, because at the time the bill of exceptions was made there was no transcript. *Bement* v. *May*, 135 Ind., at p. 670. The question, therefore, as to the correctness of the ruling on the motion to strike out portions of the information is not presented by the record.

The record is in the same condition as to the action of the court in striking out the second paragraph of appellant's reply. The bill of exceptions does not incorporate or contain any part of it, and as it was all stricken out by the court, it is not in the record, though what purports to be such reply has been copied into the transcript by the clerk. The clerk had no authority to transcribe it into the transcript. The question, therefore, as to whether the court properly struck it out or not, cannot be determined without an examination of the pleading. And that examination cannot be made by us unless such reply is properly incorporated in a bill of exceptions, duly authenticated as a part of the record.

The information shows that there are twelve townships in Jay county, and that pursuant to the statute, section 5900, Burns' R. S. 1894 (4424, R. S. 1881), the township trustees of all the townships met at the auditor's office in said county, on the first Monday of June, 1897, being the 7th day of June, 1897, for the purpose of electing a county superintendent. It names each trustee, giving the name of the township of which he is the trustee, and names P. L. Bishop as the trustee of Bearcreek township in said county. It shows that these trustees, twelve in number, at that meeting balloted for county superintendent 130 times, and that said trustee P. L. Bishop participated throughout said meeting, and voted as a township trustee, for county superintendent, without question of his right so to act. And with his vote there were twelve

trustees voting throughout. That no one having received a majority of the votes, but the appellee having received on the last ballot six votes, the meeting adjourned late in the afternoon to meet again at 8 in the evening of said day. At the meeting at 8 o'clock, it is alleged that the six trustees voting for appellee, which number did not include said Bishop, met at the auditor's office again and declared that appellee had received a majority of all the votes cast by trustees legally entitled to vote, and that he was therefore legally elected. And it is alleged that upon this election, so declared, appellee is basing his claim to the office.

The second paragraph of the answer is in confession and attempted avoidance of the information. It admits that there were twelve townships in said county, and that said Peter L. Bishop was duly elected trustee of Bearcreek township, November 6, 1894, and that he gave bond as such, qualified, and entered upon the discharge of the duties of his said office; that afterwards, to wit, on October 9, 1896, the said Peter L. Bishop was duly appointed postmaster by the Postmaster General of the United States for the post-office at the town of Bryant, located in said Bearcreek township, in said county; that he filed his bond to the approval of the proper authority, and took the oath of office as such postmaster, and entered upon the discharge of the duties of such postmaster at said town of Bryant, and thereafter continued to discharge the duties thereto pertaining up to and until August 16, 1897; that by the acceptance of said office of postmaster, said Peter L. Bishop abandoned and impliedly resigned his said office of township trustee of said Bearcreek township, and that the same became then and there vacant, and remained so vacant; that Daniel E. Greiner, the prosecuting attorney, on May 25, 1897, began a suit

on his own relation, in the name of the State, in the Jay Circuit Court, by information, against said Peter L. Bishop, to have said office of township trustee declared vacant, for the reason of the acceptance of the office of postmaster, as aforesaid; that afterwards, on June 10, 1897, such proceedings were had on said information that judgment was rendered declaring said office of township trustee of said Bearcreek township vacant, and that the same had been so vacant continuously since from October 9, 1896, when said Bishop accepted the said office of postmaster; that while said action, so commenced by information, was pending in said court, to wit, on June 7, 1897, the township trustees of eleven of the townships, naming them, Bearcreek not being among them, met at the auditor's office of Jay county for the purpose of electing a county superintendent for said county; that said Peter L. Bishop was present at said meeting, and pretended to represent said Bearcreek township as township trustee, but defendant avers that he was not then and there the trustee of said township, and had not been since October 9, 1896, when he accepted said office of postmaster, and he had no legal right to participate in said meeting of said trustees, or to vote for county superintendent, and, hence, there were at said meeting eleven trustees only who were legally entitled to cast a vote then and there for the election of county superintendent. And the answer sets out the names of the eleven trustees, and the name of the township that each represents. The answer further avers that the trustees began voting for county superintendent by ballot, and continued balloting without election until late that night, when an adjournment was had until June 8, 1897; that on said last named day said trustees reconvened and continued voting for county superintendent until they had cast 130

ballots; that on the 130th ballot the defendant received the votes of six named trustees, which was a majority of the eleven trustees who were then and there present, having a legal right to vote; and the defendant was thereupon, on motion, duly seconded, declared duly elected as such county superintendent; that on the 8th day of June, 1897, this defendant was, and had been for more than one year before said day, a resident, inhabitant, and qualified voter of Jay county, and eligible to the office of county superintendent. This answer is a complete confession that Peter L. Bishop had been duly elected trustee of Bearcreek township; that he duly qualified and entered into and took possession of the office, and had been engaged in the discharge of its duties ever since, up till the alleged judgment vacating the office, on June 10, 1897, which was after the alleged election of county superintendent, unless appellant's acceptance of the office of postmaster operated to vacate his office of township trustee. The answer, by not denying the allegation in the complaint that Bishop was acting as trustee, and voted as such trustee for county superintendent throughout said meeting of said trustees, admits that he did so act. The judgment alleged to have been rendered vacating the office of township trustee of Bearcreek township, and ousting said Bishop, as already observed, was rendered after the attempted election of county superintendent. And, therefore, that judgment did not affect the validity or legality of that election. In other words, it leaves us to inquire into the validity of that election as if the judgment of ouster had never been rendered. That being so, there is nothing alleged in the answer to support the contention of appellee that there was only eleven votes cast at that meeting, except the allegation that Bishop, after his election as trustee, had accepted

another lucrative office, namely, postmaster; but it does not allege that the salary of said postmaster exceeded $90.00 a year. The judgment of ouster in the case mentioned was reversed in this court at this term, because the information failed to allege that such salary exceeded $90.00 a year, holding that if it did not exceed that sum, as this court presumed it did not, it was not an incompatible office with that of township trustee under the State constitution; and hence its acceptance did not operate to vacate the office of township trustee. *Bishop* v. *State, ex rel.*, 149 Ind. 223. Therefore, the second paragraph of answer, failing to allege that the salary of the office of postmaster, so accepted by appellant, exceeded $90.00 a year, failed to show that he had vacated the office of trustee of Bearcreek township by the acceptance of an incompatible office. It results from this, that said answer failed to show that there were only eleven trustees legally entitled to vote at said meeting, and leaves the appellee's claim to the office resting upon the fact that he got six votes out of a total of twelve trustees, and hence, without a majority of the votes of the twelve trustees, and therefore fails to show that he was legally elected.

Besides the answer showing, as it does, that Bishop had been elected and inducted into the office of trustee of Bearcreek township, and was acting as such, at least *de facto*, his title to that office could not be questioned in this collateral way. *Parker* v. *State, ex rel.*, 133 Ind. 200, 18 L. R. A. 567; *Case* v. *State, ex rel.*, 69 Ind. 46; *Blackman* v. *State*, 12 Ind. 556 *Bansemer* v. *Mace*, 18 Ind. 27, 81 Am. Dec. 344; *Mowbray* v. *State, ex rel.*, 88 Ind. 324; *McGee* v. *State, ex rel.*, 103 Ind. 444, 446-447; *Osborne* v. *State, ex rel.*, 128 Ind. 129-130; *Relender* v. *State, ex rel.*, 149 Ind. 283, and authorities there cited.

The ruling on the demurrer to the fourth paragraph of the reply presents this feature of the case more distinctly. That reply clearly shows, not only that Bishop had been duly elected and inducted into the office of township trustee, but that he was still in and filling the office, and discharging all and singular the duties which the law requires such a trustee to do or perform at the time of such meeting and attempted election. That he met with said trustees at said meeting, as the trustee of Bearcreek township, and voted for county superintendent throughout the entire balloting therefor.

In *Parker* v. *State, ex rel., supra,* this court said: "The rule that the acts of an officer *de facto,* performed before ouster, are, as to the public, as valid as the acts of an officer *de jure,* is too familiar to the profession to need the citation of authority. The public is not to suffer because those discharging the functions of an officer may have a defective title, or no title at all." Many of the authorities above, are cited in support of this proposition, among which is *Case* v. *State, ex rel., supra.* That was a suit upon the bond of a constable by the name of Darius C. Hutchins. The third paragraph of the answer in that case averred, "That said Darius Hutchins, before the alleged breaches of said bond had been committed, and before said writ of execution had been placed in his hands, to wit, on the 4th day of May, 1875, had been elected marshal of the town of Petersburgh, in Pike county, State of Indiana, and had accepted said office, and filed his bond with the clerk of said town, as marshal, and had entered into the discharge of the duties thereof, all of which facts were matters of public notoriety, and well known to the justice who placed said writ in the hands of said Hutchins, and said justice had become bondsman for said Hutchins as marshal of the incorporated town of Petersburgh, aforesaid, wherefore," etc. The

trial court sustained a demurrer to said third paragraph of answer, upon which ruling appellant there assigned error. This court said: "We think he was still a constable *de facto*, under color of office, and that his official acts were valid, and that for a breach of his official duty his sureties are liable. His right to the office could not be questioned collaterally; it could be done only in a direct proceeding for that purpose. Until such proceedings were had, and he was ousted of his office, or his term expired, his sureties would remain liable for his misfeasance in office," citing in support thereof two of the cases above cited on this point, and also *Creighton* v. *Piper*, 14 Ind. 182; *Gumberts* v. *Adams Express Co.*, 28 Ind. 181. All of the cases cited are to the same effect. Therefore the second paragraph of the answer did not state a defense to the information, and the fourth paragraph of reply was sufficient to avoid the answer if it had ever contained the allegation that the salary of the post-office which said Bishop had accepted exceeded $90.00 a year.

Cross-error is assigned by appellee upon overruling his demurrer to the information. The first objection to that pleading is that the relator had no right to sue in the name of the State. The statute is express authority to support appellant. Sections 1145, 1146, Burns' R. S. 1894 (1131, 1132, R. S. 1881).

The only other objection worthy of notice is that the information fails to allege that the relator had been an inhabitant of the county during one year next preceding his appointment, a qualification required of all county officers by section 4, article 6, of the constitution. But the information alleged that the appellant was eligible. That was sufficient. *State, ex rel.*, v. *Gorby*, 122 Ind. 17, 28; *State, ex rel.*, v. *Long*, 91 Ind. 351, 354; *State, ex rel.*, v. *Bieler*, 87 Ind. 327; *Reynolds* v. *State, ex rel.*, 61 Ind. 392, 404; *Relender* v. *State, supra*.

The circuit court erred in overruling the demurrer to the second paragraph of the answer, and in sustaining the demurrer to the fourth paragraph of the reply. The judgment is reversed, and the cause remanded, with instructions to sustain the demurrer to the second paragraph of the answer, and overrule the demurrer to the fourth paragraph of the plaintiff's reply, and for further proceedings not inconsistent with this opinion.